OPINION
{¶ 1} Following his conviction and sentence for possession of cocaine and crack cocaine, Defendant-Appellant, Russell Cook, appeals the judgment of the Putnam County Common Pleas Court denying his motion to suppress the evidence upon which the charges were based. On appeal, Cook contends that the affidavit in support of the warrant to search his home lacked probable cause that contraband or evidence of a crime would be found therein. However, two garbage pulls from Cook's residence, revealing drug-related materials, cocaine residue, and items linking the garbage to Cook's house, in conjunction with known drug users and dealers parking in front of the residence on numerous occasions throughout a six-month period, adequately supports the magistate's probable cause determination that a "fair probability" existed that contraband or evidence of a crime would be found therein. Accordingly, we affirm the trial court's decision.
 {¶ 2} Putnam County Sheriff's Office Deputy Todd Pingle, assigned to the Multi-Area Narcotics Task Force ("Man Unit"), began an investigation of Cook and his live-in girlfriend, Janie Collins, in the spring of 1999, after hearing from another Putnam County deputy that Cook was selling eight-balls of cocaine from their residence. Throughout the summer of 1999, Pingle and other Man Unit officers conducted surveillance of the Cook residence. On multiple occasions, license plates of cars parked in front of the home were recorded and later determined to be from vehicles of known drug users and dealers. On October 6, 1999, Pingle removed eight garbage bags from the Cook residence, which contained evidence of drug use and sale and articles linking the garbage to Cook and Collins. On October 13, 1999, Pingle again removed garbage bags from their home, and similar evidence was contained therein.
 {¶ 3} Based upon this evidence, a search warrant was issued by a magistrate for Cook's residence on October 14, 1999. Execution of the warrant revealed 105 grams of cocaine and 10 grams of crack cocaine. Thereafter, Cook was indicted for possession of cocaine, a second degree felony, possession of crack cocaine, a fifth degree felony, illegal manufacturing of crack cocaine, a second degree felony, and preparation of drugs for sale, a third degree felony. Cook moved to suppress the evidence obtained against him, claiming that the affidavit in support of the search warrant lacked probable cause. After a January 20, 2000 hearing, the motion was denied.
 {¶ 4} Pursuant to a negotiated plea agreement, Cook pled guilty to the two possession charges, and the remaining charges were dropped. Cook was subsequently sentenced to concurrent terms of six years of incarceration for possession of cocaine and twelve months incarceration for possession of crack cocaine. On August 24, 2001, Cook moved to withdraw his previously entered pleas, which motion was overruled by the trial court. On appeal, this Court reversed the decision, permitting withdrawal of the pleas. On August 5, 2002, pursuant to further negotiations, Cook entered pleas of no contest to the two possession charges and was sentenced to concurrent terms of five years incarceration for possession of cocaine and twelve months incarceration for possession of crack cocaine.
 {¶ 5} From judgment of conviction and sentence, Cook appeals, asserting a single assignment of error for our review.
Assignment of Error I
 The trial court should have sustained the motion to suppress because the affidavit in support of the search warrant failed to provide probable cause, and a reasonable police officer should have known that probable cause was lacking.
 {¶ 6} Cook contends that the affidavit in support of the warrant to search his home lacked probable cause that contraband or evidence of a crime would be found therein. Further, Cook argues that the good faith exception to the Fourth Amendment exclusionary rule is not applicable because a reasonable officer should not have presumed that the warrant was valid, and the affidavit in support of the warrant was in reckless disregard of the truth.
 {¶ 7} In reviewing a magistrate's decision to issue a search warrant, this Court is prohibited from considering the issue under a de novo standard.[1] Instead, our duty, like that of the trial court, "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."[2] An appellate court, in assessing the legal sufficiency of an affidavit supporting a probable cause finding, "may draw reasonable, common sense inferences from the allegations contained therein if such inferences are drawn from facts already set forth in the affidavit."[3] The magistrate's decision is to be accorded great deference, thus, "doubtful or marginal cases in this area should be resolved in favor of upholding the warrant."[4]
 {¶ 8} When deciding whether an affidavit supporting a search warrant contains sufficient probable cause, the obligation of the issuing magistrate is to
 make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[5]
 Accordingly, a magistrate must base its probable cause finding on a "totality of the circumstances," and, while factors such as the "veracity" and "basis of knowledge" of any hearsay source remain relevant aspects of consideration, they must be viewed in light of all the surrounding circumstances.[6] "Probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules."[7]
 {¶ 9} The affidavit supporting the magistrate's finding of probable cause to issue a search warrant contains the following information: (1) Officer Pingle was informed by another officer six months prior to signing the affidavit that Cook was selling eight-balls of cocaine from his residence, which provided the basis to begin an investigation; (2) surveillance of the residence over the following six months revealed that on numerous occasions vehicles owned by known drug users and dealers were parked in front of Cook's house, three of which were so parked on September 30, 1999; (3) on October 6, 1999, Officer Pingle removed eight garbage bags from just outside the curtilage of Cook's residence, which contained fourteen corners of plastic baggies and two partial corners of plastic baggies with cocaine residue on them, sixteen straws or "tooters," some of which tested positive for cocaine residue, a used copper char boy, commonly used in crack pipes, thirty plastic bags with the corners removed, and miscellaneous items linking the trash bags to Cook and Collins; (4) on October 13, 1999, Pingle removed seven garbage bags from the Cook residence, which contained nine straws with cocaine residue, sixteen corners of plastic bags that tested positive for cocaine residue, ten sandwich size plastic bags and twenty-eight large plastic bags with the corners removed, and a doctor bill linking the trash to Cook's residence; and (5) based upon Pingle's experience of executing over one hundred search warrants for drug-related activity, corners of plastic bags are commonly used to package cocaine in eight-ball or larger quantities, char boys are typically used as a "screen" in crack pipes, and the number of plastic bags with corners removed within a one week period indicates a pattern of dealing cocaine from Cook's residence. The search warrant was issued one day following the October 13, 1999 garbage pull.
 {¶ 10} Cook contends that the automobiles parked in front of his house do not, standing alone, provide probable cause that the occupants of the vehicles were actually at his house. He further maintains that, in isolation, the garbage pulls do not demonstrate that the evidence found was from his residence because anyone could have placed the evidence into his garbage. However, as noted above, in reviewing an affidavit, a magistrate does not view the assertions of the requesting officer in isolation; instead, a magistrate's finding must be based upon the totality of the circumstances. When taken as a whole, the evidence included in the affidavit supports that there was at least a "fair probability" that contraband or evidence of a crime would be found at Cook's residence.
 {¶ 11} Cook additionally argues that Pingle failed to include any information in the affidavit concerning his training or experience in law enforcement or in narcotics investigations. However, the affidavit indicates that Pingle has previously been involved with approximately one hundred search warrants relating to drug related activity and was assigned to the Man Unit. Accordingly, we find Appellant's assertions in this regard to be without merit.
 {¶ 12} Because we have found that probable cause supported the magistrate's issuance of the search warrant, Cook's assertions concerning the good-faith exception are rendered moot.
 {¶ 13} For these reasons, we overrule Cook's sole assignment of error.
 {¶ 14} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
 BRYANT, P.J., and SHAW, J., concur.
[1] State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus, following Illinois v. Gates (1983), 462 U.S. 213.
[2] Id.
[3] State v. Bean (1983), 13 Ohio App.3d 69, paragraph two of the syllabus.
[4] George, 45 Ohio St.3d at paragraph two of the syllabus.
[5] Id. at paragraph one of the syllabus, quoting Gates,462 U.S. at 238-39. See, also, State v. Williams (June 6, 2000), Allen App. No. 1-99-86, 2000-Ohio-1861.
[6] See, e.g., State v. Swearingen (1999), 131 Ohio App.3d 124,128.
[7] Williams, supra, quoting Gates, 462 U.S. at 232.